Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| YANILKA MONTAÑEZ<br><br>Querellante-Apelada<br><br><br>Vs.<br><br><br>HUANG X CHANG CORP. H/N/C RICA CHINA RESTAURANT, ASEGURDORA XYZ<br><br>Querellada-Apelante | KLAN202500381 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Toa Alta<br><br>Caso Núm. TA2024CV01130<br><br>Sala: 201-B<br><br>Sobre: LEY 80 DESPIDO INJUSTIFICADO LEY 80 SOBRE SALARIOS: PROCEDIMIENTO SUMARIO LEY NÚM. 2 DEL 17 DE OCT. DE 1961 LEY 402 DE 12 DE MAYO DE 1950 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparece la parte apelante, Huang X Chang Corp h/n/c Rica China Restaurant y solicita la revisión de la *Sentencia Sumaria* notificada el 24 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de Toa Alta. En la sentencia, el foro primario ordenó al apelante el pago de $21,240 en concepto de mesada, más $5,310 en honorarios de abogado a favor de la parte apelada la señora Yanilka Montañez.

Por los fundamentos expuestos en esta sentencia, *confirmamos* en parte y *revocamos* en parte la sentencia sumaria apelada.

**-I-**

El 4 de octubre de 2024, la parte apelada presentó una querella al amparo de la *Ley Sobre Despido Injustificado*, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a, *et seq.*, y la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118, *et seq.* Alegó que, trabajó 16 años para la parte apelante en diversas posiciones y tareas. Añadió que, devengaba comisiones por servicio de entrega de órdenes de comidas. Aseveró tener un récord de empleo nítido, sin apunte disciplinario o amonestación. Incluyó un relato sobre ciertos eventos ocurridos el 11 de agosto de 2024 en horas de trabajo consistentes en un fuerte desacuerdo, y discusión con su patrono que, resultó en trato agresivo y gritos provenientes de su patrono. Así las cosas, el 19 de agosto de 2024 la parte apelante entregó a la apelada una carta de despido. El patrono informó en la carta el cierre de la operación de entregas de comida en el restaurante por lo que tenía que cesantear a varios empleados. El 21 de octubre de 2025, la parte apelante contestó las alegaciones en su contra. En suma, alegó que, la "[l]a operación de delivery del restaurante Rica China cerró" debido a la reducción en volumen de ganancias y "fue necesaria para aumentar la competitividad, eficiencia, productividad y buen nombre del establecimiento y por ello fue necesario" descontinuar el método de ventas por "delivery".

El 6 de marzo de 2025, la parte apelada presentó una *Moción de sentencia sumaria*. Argumentó que, no existía controversia de hechos que impidiera una sentencia sumaria, pues solo estaba pendiente aplicar el derecho a los hechos incontrovertidos del caso. El apelante presentó una *Contestación a la moción de sentencia sumaria y solicitud de sentencia sumaria*. Reiteró las alegaciones que presentó en su contestación a la querella incoada e insistió que el despido estuvo justificado. La parte apelada presentó una

oposición a la sentencia sumaria solicitada. Argumentó que, la moción promovida por el apelante incumplió con la Regla 36.3 de Procedimiento Civil, y reiteró su posición en cuanto a la sentencia sumaria a su favor. El 23 de abril de 2025, el foro primario emitió una *Sentencia Sumaria* en contra del apelante. Concluyó falta de justa causa para el despido. En específico, el tribunal apelado concluyó, como cuestión de derecho que, la parte apelante no logró evidenciar un motivo justo para el despido de la apelada. La conclusión del foro apelado descansa sobre las siguientes determinaciones de hechos:

1. El querellado es el Sr. Huang Chang, propietario de Rica Chica Restaurant.

2. La querellante fue empleada de Rica China Restaurant.

3. La querellante trabajó en Rica China Restaurant desde el año 2008.

4. La querellante devengaba un sueldo por hora de $10.50 por hora más comisión.

5. La querellante devengaba un sueldo semanal aproximado de $300.00.

6. En cuanto al horario de la querellante, esta trabajaba de 3 a 4 días a la semana.

7. En cuanto al número de horas, esta trabajaba 6 horas al día.

8. La querellante realizaba funciones de entrega de comida a domicilio en Rica China Restaurant.

9. También la querellante realizaba funciones como "atender llamadas, funciones de cajera y ayudante de cocina".

10. Rica Chica Restaurant no tenía un récord escrito de asistencia incluyendo las entradas y salidas de sus empleados.

11. Rica Chica Restaurant no guarda los horarios pasados de sus empleados.

12. Rica Chica Restaurant no cuenta con un manual de empleados.

13. Mientras la querellante trabajaba en Rica China Restaurant a este nunca le dieron una amonestación escrita.

14. El 19 de agosto del 2024, el querellado le entregó un documento dirigido al querellante denominado "memorando" el cual indica lo siguiente:

"Debido a la baja demanda en nuestro servicio de entrega a domicilio, nos vemos en la difícil poción de tener que descontinuar este método de ventas. Agradecemos el esfuerzo y dedicación de ustedes que han trabajado en esa área. Sin embargo, lamentablemente, esto significa que ya no requeriremos personal para este servicio. Entendemos que este cambio puede ser desafiante, y estamos comprometidos a apoyar a los empleados afectados durante esta transición. Agradecemos su compresión y colaboración durante este proceso."

15. El 19 de agosto del 2024, el querellado le entregó un documento escrito a mano a la querellante en el que cuadraba sus días de vacaciones, enfermedad y bono de navidad por la cantidad total de $978.00.

16. El 19 de agosto del 2024, el querellado le entregó un cheque a la querellante por la cantidad de $978.00

17. Luego de que la querellante cesó su trabajo en Rica China Restaurant a esta nunca la llamaron para ofrecerle trabajo.

Inconforme, el 5 de mayo de 2025, el apelante instó un recurso de apelación en el cual esgrimió la comisión de los siguientes errores:

Erró manifiestamente el HTPI al determinar que la Apelada fue despedida sin justa causa sin siquiera considerar la prueba que presentó [el] Apelante [en] su solicitud de sentencia sumaria.

Erró manifiestamente el HTPI al no considerar admitidas las relaciones de hechos para los cuales se indicaron los párrafos y las páginas de las transcripciones de las deposiciones tomadas a las partes que las establecen, y que no fueron debidamente controvertidas por la Apelada en su Oposición a Solicitud de Moción de Sentencia Sumaria.

Erró manifiestamente el HTPI en sus determinaciones de hechos.

Erró manifiestamente el HTPI al concluir que la Apelante tenía que reponer en su puesto a la Apelada aun cuando es un hecho no controvertido que las funciones de la clasificación ocupacional de la Apelada cesaron permanentemente.

Erró el HTPI al imponer la cuantía de compensación por mesada.

La parte apelada también compareció mediante alegato escrito. Procedemos a adjudicar el presente recurso apelativo con el beneficio de la comparecencia de las partes, el contenido del expediente apelativo y el derecho aplicable.

## -II-

### -A-

La sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los cuales no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. 32 LPRA Ap. V, R. 36.3(e); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015); *Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 555-556 (2011). Para dictar sentencia sumariamente, la parte promovente debe demostrar "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes". 32 LPRA Ap. V, R. 36.1-36.2. Un hecho material esencial y pertinente es aquel que puede afectar el resultado de la reclamación de conformidad con el derecho sustantivo aplicable. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 300 (2012).

La parte opositora a la sentencia sumaria "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma tan detallada y específica como lo haya hecho la parte promovente". *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 328 (2013). La parte opositora "estará obligada a demostrar que tiene prueba para sustanciar sus alegaciones". *Abrams Rivera v. E.L.A.*, 178 DPR 914, 933 (2010). El Tribunal de Apelaciones está en igual posición que, el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015); *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Corresponde al foro apelativo realizar una evaluación de *novo. Meléndez González et al. v. M. Cuebas, supra,* pág. 116. Es indispensable "analizar tanto los documentos que acompañan la solicitud como los documentos de la oposición para determinar si existe o no controversia de hechos". *Rosado Reyes v.*

*Global Healthcare*, 205 DPR 796, 809 (2020). Es decir, como parte de nuestra función revisora, debemos evaluar todos los documentos que obren en el expediente de modo que, previo a determinar la procedencia de una solicitud de sentencia sumaria, realicemos un "balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles". *Íd.*, pág. 808.

En consecuencia, el tribunal podrá dictar sentencia sumaria si de "las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, proceda dictar sentencia sumaria a favor de la parte promovente". *Lugo Montalvo v. Sol Meliá Vacation, supra*, pág. 225. Debido a que, son "quienes conocen de primera mano sus respectivas posiciones, así como la evidencia disponible en el caso", las partes tienen "el deber de identificar cada uno de los hechos que estiman relevantes, al igual que la prueba admisible que los sostiene", para, de este modo, "poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 433-434 (2013).

*-B-*

Nuestro ordenamiento laboral no prohíbe el despido de un empleado. Más bien protege "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo [...] a la vez que otorg[a] unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado". Exposición de Motivos de la Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976. Véanse, además: *Feliciano*

*Martes v. Sheraton*, 182 DPR 368 (2011); *Vélez Cortés v. Baxter*, 179 DPR 455, 465 (2010), *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364 (2001). La *Ley de Indemnización por Despido sin Justa Causa*, Ley Núm. 80 de 30 de mayo de 1976 ("Ley Núm. 80"), tiene como propósito proteger el derecho de los trabajadores ante acciones "arbitrarias y caprichosas" de los patronos. El estatuto impone el pago de una indemnización conocida como "mesada" al patrono que sin justa causa despide a un empleado contratado por tiempo indeterminado. Art. 1 de la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a; *Véase, Indulac v. Union*, 207 DPR 279 (2021).

La Ley Núm. 80, no establece específicamente qué constituye un despido injustificado. Sin embargo, menciona varios escenarios o circunstancias que liberan al patrono de responsabilidad. Algunas de estas circunstancias están hincadas en conducta atribuible al empleado, mientras que otras responden al curso decisorio de la gerencia empresarial, como sería el cierre, la reorganización o reducción en la producción, ventas o ganancias. Los incisos (d), (e) y (f) del Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b, incluyen las circunstancias que afectan el buen y normal funcionamiento de una empresa que, justifican el despido de empleados. Los incisos consideran como justa causa para el despido de empleados las circunstancias siguientes:

> (d) Cierre total, temporero o parcial de las operaciones del establecimiento.
>
> (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
>
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.[1]

---

[1] Resaltamos que, previo a la aprobación de la Ley Núm. 4-2017, 29 LPRA sec. 272 et seq., mejor conocida como la Ley de transformación y Flexibilidad Laboral, el inciso (f) exponía siguiente: "(f) Reducciones en empleo que se hacen

Las circunstancias previstas en estos tres incisos giran en torno a las actuaciones del patrono sobre la administración de su negocio, y principalmente ocurren por razones de índole económica. *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 984 (2022). Las empresas pueden cesantear a sus empleados sin la obligación de pagar la correspondiente indemnización cuando enfrentan alguna de las precitadas circunstancias. Un patrono queda exento de pagar la indemnización fijada por la Ley Núm. 80 si la decisión del despido se toma como parte de una reorganización empresarial, según dispone el Art. 2(e) de la Ley Núm. 80. *SLG Zapata-Rivera v. J.F. Montalvo, supra,* pág. 426. Tal reorganización debe ser *bona fide*, es decir, no puede ser producto del mero capricho del patrono sino producto de consideraciones relacionadas al manejo de la empresa.

Cuando la actuación patronal responda a una reestructuración *bona fide*, el patrono puede "modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad". *Íd.* Los cambios en la empresa pueden acarrear el despido y el reclutamiento simultáneo de personal debido a que "las reformas en ocasiones exigen prescindir de labores hasta entonces útiles para el funcionamiento del negocio y la incorporación de posiciones nuevas con destrezas diferentes necesarias para lograr unas metas empresariales actualizadas". *Íd.*, pág. 427. No obstante, para que el patrono pueda justificar el despido al amparo del inciso (e) —por reorganización—debe "presentar evidencia acreditativa del plan de reorganización

---

necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido".

implantado, así como su utilidad". *Íd.*

En relación con el Art. 2(f) de la Ley Núm. 80 el Tribunal Supremo expresó que "la situación económica provocada por la baja en la producción, ventas o ganancias en una empresa puede llevar al patrono a tomar medidas necesarias para limitar los gastos tales como disminuir la plantilla laboral". *Íd.*, pág. 426. No "toda merma en ventas o ganancias se tradu[ce] en justa causa para un despido. Por el contrario, esta aplicará únicamente a aquellas situaciones en las cuales la aludida disminución sea una sustancial al punto que atente contra la continuidad de la empresa". *Íd.* Si un patrono pretende justificar el despido al amparo del Art. 2(f) —por disminución de ganancias— debe presentar evidencia que acredite "la alegada disminución en la producción, ventas o ganancias". *Íd.*, pág. 427.

### -*III*-

El primer paso es examinar con cuidado la moción de sentencia sumaria promovida por la parte apelada. Corresponde corroborar si el escrito cumplió con el formalismo requerido en la Regla 36 de Procedimiento Civil. Analizaremos los anejos del escrito con el objetivo de determinar si estos permiten inferir, como incontrovertibles, los hechos propuestos por medio de estas piezas de evidencia. Culminada esta primera etapa, estudiaremos de igual forma la oposición a la solución sumaria de la querella, pero con el objetivo de vislumbrar el intento de refutación del apelante sobre los hechos propuestos por la apelada. Sobre la base del anterior análisis, determinaremos los hechos que quedaron verdaderamente controvertidos, y los que pueden considerarse como libre de controversia.

De entrada, notamos que, en la moción de sentencia sumaria la parte apelada incluyó una relación de 16 párrafos numéricamente organizados, en los que expresó el relato de hechos

que propone como libre de controversia, para cada hecho, tuvo el cuidado de señalar algún documento, o testimonio, admisible en evidencia para verificarlo. En consecuencia, preliminarmente, los siguientes hechos están libre de controversia, sujetos al intento de refutación de la parte apelante:

1. El querellado es el Sr. Huang Chang, propietario de Rica Chica Restaurant. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 9, L. 21-23.

2. La querellante fue empleada de Rica China Restaurant. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 10, L. 25, Pág. 11, L.1-2.

3. La querellante trabajó en Rica China Restaurant desde el año 2008. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 12, L. 13-22. Exhibit 1 y 2.

4. La querellante devengaba un sueldo por hora de $10.50 por hora más comisión. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 15, L. 8-9.

5. La querellante devengaba un sueldo semanal aproximado de $300.00. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 24, L. 12-13.

6. En cuanto al horario de la querellante, esta trabajaba de 3 a 4 días a la semana. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 15, L. 15-17.

7. En cuanto al número de horas, esta trabajaba 6 horas al día. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 15, L. 19-21.

8. La querellante realizaba funciones de entrega de comida a domicilio en Rica China Restaurant. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 16, L.1-2.

9. También la querellante realizaba funciones como "atender llamadas, funciones de cajera y ayudante de cocina". Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 16, L. 5-13.

10. Rica Chica Restaurant no tenía un récord escrito de asistencia incluyendo las entradas y salidas de sus empleados. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 16, L. 14-18.

11. Rica Chica Restaurant no guarda los horarios pasados de sus empleados. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 17, L. 1-5.

12. Rica Chica Restaurant no cuenta con un manual de empleados. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 18, L. 11-12.

13. Mientras la querellante trabajaba en Rica China Restaurant a este nunca le dieron una amonestación escrita. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 19, L. 1-6.

14. El 19 de agosto del 2024, el querellado le entregó un documento dirigido a la querellante y denominado "memorando" el cual indica lo siguiente:

> Debido a la baja demanda en nuestro servicio de entrega a domicilio, nos vemos en la difícil poción de tener que descontinuar este método de ventas. Agradecemos el esfuerzo y dedicación de ustedes que han trabajado en esa área. Sin embargo, lamentablemente, esto significa que ya no requeriremos personal para este servicio. Entendemos que este cambio puede ser desafiante, y estamos comprometidos a apoyar a los empleados afectados durante esta transición. Agradecemos su compresión y colaboración durante este proceso.

Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 10, L. 7-24. Exhibit 2.

15. El 19 de agosto del 2024, el querellado le entregó un documento escrito a mano al querellante en el que cuadraba sus días de vacaciones, enfermedad y bono de navidad por la cantidad total de $1,336.00. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 10, L. 25. Pág. 11, L.1-15. Exhibit 3.

16. El 19 de agosto del 2024, el querellado le entregó un cheque a la querellante. Deposición del Sr. Huang Chang, 4 de diciembre del 2024, Pág. 31, L. 2-4.

En su oposición a la solicitud de sentencia sumaria la parte apelante solo cuestiona los hechos propuestos número 3, 7, 10, y 11. Sobre el hecho propuesto número 3 la parte apelante hizo referencia al testimonio de la apelada en su deposición. Conforme al propio testimonio de la apelada, esta dejó de trabajar en el restaurante en el 2018, y regresó en el 2020:

P Okey. Usted había renunciado al trabajo de Rica China y volvió a trabajar desde julio del 2020, ¿verdad que sí?

R Sí.

[...]

P ¿Cuántas veces usted renunció y volvió a trabajar?

R Creo que una.

P ¿Una vez?

R Sí.

P ¿O sea, que usted estuvo desde el 2008, se fue un tiempo y después volvió en el 2020?

R Estuve desde el 2008, trabajé como hasta el 2018...

P Anjá. Y se fue otra vez.

R ... me fui y viré en el 2020.[2]

Como expusimos, para la revisión de una sentencia sumaria, estamos en igual posición que el foro de primera instancia, en cuanto al examen que podemos efectuar a los documentos anejados por las partes a sus respectivas mociones. *Vera v. Dr. Bravo, supra*, págs. 334–335. Lo anterior, necesariamente implica aquilatar la prueba, valorizarla en cuanto a su confiabilidad y veracidad, pero también descartar aquella que resulte inverosímil, increíble o poco confiable. *Meléndez González et al. v. M. Cuebas, supra*, págs. 115-116. El propio testimonio de la parte apelada arroja duda sobre el total de años trabajados para la parte apelante. En la moción de sentencia sumaria adujo 16 años continuos de trabajo, pero su testimonio refuta tal aseveración. No hay certeza sobre el total de años trabajado. Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal debe determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. *JADM v. Centro Comercial Plaza Carolina*, 132 DPR 785, 802-803 (1983). Consideramos el asunto del total de años trabajados por la apelada controvertido por el apelante, esta incertidumbre afecta la indemnización otorgada por el tribunal pues una de la variables indispensables en el cálculo de la mesada es el total de años de servicios del empleado despedido. Un cálculo fundamentado sobre evidencia imprecisa podría crear un caso de enriquecimiento injusto. Consideradas tales premisas, somos de la opinión que, el asunto debe dilucidarse a fondo ante el foro de primera instancia donde la juzgadora de los hechos podrá aquilatar la prueba que cada parte logre aportar sobre el asunto.

---

[2] Yamilka Montañez Torres, Deposición, 4 de diciembre de 2024, págs. 12, 24-25.

La parte apelante trata de refutar la determinación de hecho número 7 con su propio testimonio. Asegura que, es incorrecto afirmar un total 6 horas de trabajo por día, más bien estima el total diario de la jornada de trabajo de la apelada en unas 5 horas. La parte apelada testificó que trabajaba unas 6 horas al día. Pero ambas partes están de acuerdo en que la apelada devengaba un sueldo de $300 semanal. El foro primario utilizó el sueldo semanal de la apelada para calcular la indemnización provista por la Ley Núm. 80. Se considera un hecho material o esencial "aquel que pueda afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). En consecuencia, concluimos que, el número diario de horas de trabajo no es un hecho material que pueda afectar el resultado de este pleito. Esto debido a la propia admisión del apelante sobre el sueldo semanal devengado por la apelada.

En cuanto al hechos número 10 y 11 el apelante admite contar con un archivo de nómina administrado por su contable en la cual está registrada la nómina de la parte apelada:

P. Por ejemplo; si usted quiere verificar que las horas que Yanilka trabajó en el 2024, usted puede verificar? ¿Esos horarios los guarda, están en algún récord?

R No, porque para mí es difícil.

P Okey.

R Porque cuando ella ha cobrado, ella saca cuenta de esos horarios ya no...

P Okey. No hay problema con eso. Pues, no tienen un récord per sé. ¿Y quién trabaja la contabilidad, señor Chang?

R Un señor que se llama Alfonso, antes otro que se llama Ramón Torres, ahora se llama Alfonso.

P ¿Y él es el que se encarga de cuadrar la nómina?

R No, no. Yo lo envío.

P ¿Usted hace la nómina?

R Sí, yo hago la nómina.

P Y sobre la nómina, ¿usted tiene récords?

R Sí.

P ¿De todo lo que se pagó?

R Sí, tengo.

P ¿Por todos los años para atrás?

R No, no. Alguno ya se perdió, pero algunos sí yo los tengo.

P Le pregunto, ¿quien se encarga de pagar las aportaciones al Seguro Social de sus empleados?

R Ah, bueno, eso es el contable.

P Okey.

R El contable hace todo eso y lleva todo en la cuenta del negocio.

P ¿Y el contable tendrá récords de todo eso si lo necesitaras?

R Supuestamente sí, supuestamente.[3]

Damos por cierto el hecho admitido en cuanto al registro de nómina aducido por el apelado. En el curso normal de los negocios es práctica común llevar un sistema de nómina administrado por un profesional. La prueba aportada por la parte apelada nos lleva a inferir que el apelante cumplía con sus obligaciones tributarias y es razonable concluir que para ello lleva un sistema de nóminas preciso. Por ello, según testificado por el apelante, su contable lleva el diario de pagos del negocio, incluso el gasto de salario mensual porque es necesario para mantener al día las cuentas contributivas del negocio.[4] Empero, la existencia o no del sistema de nómina del negocio no es un hecho material que podría cambiar el resultado de presente litigio. El objeto del presente litigio es evidenciar la ocurrencia de un despido, y que tal despido carece de justa causa.

Precisamente, la parte apelada no hizo intento de refutación sobre el hecho propuesto número 14 y 15 de la parte apelada. Estos hechos establecen fuera de controversia que la parte apelada fue despedida de su anterior empleo. El propio apelante admite tal

---

[3] Huang X. Chang, Deposición, 4 de diciembre de 2024, págs. 17-18.
[4] *Íd.*, págs. 22-23.

circunstancia en su escrito en oposición, pues como único asunto en controversia solo esgrime: "Si hubo despido injustificado". En su escrito en oposición argumenta a favor de justa causa para el despido de la parte apelada. Conforme a los hechos propuestos por el apelante el despido de la apelada fue provocado por los siguientes motivos:

17. La operación de delivery con empleados del Querellado cerró y no ha vuelto a operar.

18. Rica China Restaurant utiliza el sistema de Door Dash para que hagan los deliveries.

19. El Querellado decidió cerrar su operación interna de delivery porque tenía demasiados gastos, no era rentable y se sustituyó por el sistema de Door Dash.

20. El servicio de delivery interno de Rica China generaba mucha presión, problemas con y entre los empleados, quejas de los clientes, era muy ineficiente porque tardaban mucho los deliveries.

Hemos estudiado con cuidado la oposición y la solicitud de sentencia sumaria de la parte apelante, en cuanto a los hechos propuestos arriba al crisol del formalismo establecido en la Regla 36.3 (c) de Procedimiento Civil, y concluimos que el apelante no logró establecer una justa causa para el despido. El apelante asevera la necesidad de cerrar la operación de entrega de comidas del negocio sobre una supuesta merma en volumen de ganancias y "para aumentar la competitividad, eficiencia, productividad y buen nombre del establecimiento". En su deposición la parte apelante testificó que, decidió cerrar el servicio de entregas de comida porque tenía demasiados gastos, y no era rentable. Además, declaró que, operacionalmente era muy problemático, era malo y generaba quejas de clientes.

No obstante, estas aseveraciones chocan con las propias admisiones del apelante en cuanto a la existencia de un registro de nómina, y el hecho de que el contable llena las planillas de ingresos mensuales y anuales del negocio.[5] Finalmente, el propio

---

[5] *Íd.*, págs. 22-23.

apelante respondió que las ventas de negocio para el año 2024 "están bien".[6] "[P]uede haber justa causa para despedir a un empleado por hechos no imputables a éste y sí al patrono". R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, [sin Ed.], rev. 2005, pág. 120. De esta manera se reconoce que pueden surgir condiciones en la operación de los negocios que requieran cesantear empleomanía sin que ello necesariamente contravenga las disposiciones de la Ley Núm. 80. Están permitidos los despidos sin obligación de pagar la mesada cuando el patrono enfrenta alguna de las situaciones siguientes: (i) el cierre total, temporero o parcial de las operaciones del establecimiento; (ii) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público, y (iii) reducciones en empleo que se hacen necesarias debido a reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. 29 LPRA sec. 185b (d), (e) y (f). Estas tres causas "[e]stán relacionadas a actuaciones del patrono dirigidas a la administración de su negocio, y principalmente se presentan por razones de índole económica que surgen según la operación diaria de las empresas". *Díaz v. Wyndham Hotel Corp.*, supra, pág. 376.

Para justificar el despido al amparo de cualquiera de estas modalidades la parte apelante debió presentar evidencia acreditativa de la alegada disminución en la producción, ventas o ganancias, según corresponda. Tenía que probar, mediante preponderancia de la evidencia, los hechos constitutivos de alguno de los fundamentos eximentes de responsabilidad según consignados en el Art. 2 de la Ley Núm. 80. *Rivera Figueroa v. The*

---

[6] *Íd.*, pág. 23.

*Fuller Brush Co.*, 180 DPR 894 (2011); *Belk v. Martínez*, 146 DPR 215 (1998). No obstante, solo contamos con su propio testimonio a esos efectos. Cuando una parte ofrece prueba más débil y menos satisfactoria para probar sus alegaciones, mientras posee prueba más firme y satisfactoria, la evidencia ofrecida debe considerarse con sospecha. Regla 110 (g) de Evidencia, 32 LPRA Ap. VI, R. 110 (g). El apelante testificó sobre el sistema de contabilidad del negocio. Sistema que, permite a su contable preparar las planillas mensuales y anuales para cumplir con su obligación tributaria. También admitió que su contable lleva el registro de nómina de su negocio. Ahora, en su escrito de oposición a la sentencia sumaria, aduce merma de ventas y ganancias como excusa para el despido de la apelada, pero en cuanto a este punto solo ofreció su propio testimonio. En consecuencia, sobre este asunto, no procede variar la determinación del foro primario, puesto que, la parte apelante tenía disponible mejor evidencia para demostrar su postura, lo cual resulta en un menoscabo del valor probatorio sobre su testimonio. E. L. Chiesa, *Tratado de Derecho Probatorio*, *Reglas de Evidencia de Puerto Rico y Federales*, 1ª Ed., sec. 14.8. Tomo II. Pág. 1115 (2005).

La Regla 36.3 (c) de Procedimiento Civil es muy clara en cuanto a la forma correcta de refutar los hechos promovidos como libres de controversia en una moción de sentencia sumaria, la regla establece que:

> [L]a parte contraria no podrá descansar solamente en aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.

En definitiva, en cuanto al asunto del motivo para el despido de la parte apelada, el apelante no logró refutar los hechos propuestos. Regla 36.3 (d) de Procedimiento Civil, 32 LPRA Ap., R.

36.3 (d). Fundamentados en el análisis que antecede, incorporamos las determinaciones de hechos formuladas por el foro primario como aquí transcritas.

Ahora bien, persiste una controversia de hechos entre las partes. El testimonio de la apelada arroja duda sobre el total de años trabajados por ella para la parte apelante. No hay certeza sobre el total. En consecuencia, dejamos sin efecto el remedio provisto por el foro apelado. Corresponde al foro primario adjudicar el asunto.

## -*IV*-

Por los fundamentos antes expuestos, *confirmamos* la sentencia sumaria apelada, excepto que, *revocamos* el cálculo de mesada efectuado por el foro de primera instancia. *Ordenamos* la celebración de una vista en donde el foro apelado deberá adjudicar el total de la mesada de la apelada sobre la base de la prueba que aporten la partes. *Devolvemos* el pleito al foro primario para la continuación de los procedimientos de forma compatible con esta sentencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones